UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. PAUL N. EICHWEDEL, | ) ) ) |
| Petitioner, | ) ) |
| v. | ) No. 08 C 50077 ) |
| NEDRA CHANDLER, Warden, Dixon Correctional Center, | ) ) ) |
| Respondent. | ) The Honorable ) Philip G. Reinhard, ) Judge Presiding. ) |

*FILED*

*JUL 3 0 2008*

*MICHAEL W. DOBBINS*
*CLERK, U.S. DISTRICT COURT*

## MOTION FOR ENLARGEMENT OF TIME

NOW COMES the Petitioner, Paul N. Eichwedel, pro se, pursuant to Rules 5(e) and 11 of the Rules Governing Section 2254 cases in the United States District Courts and Rule 6(b) of the Federal Rules of Civil Procedure (West 2005) and moves this Honorable Court for a sixty (60) day enlargement of time within which to file his reply brief.  In support thereof, Petitioner states the following:

1.  Petitioner is an inmate incarcerated at the Dixon Correctional Center, an Illinois Department of Corrections (IDOC) facility located in Dixon, Illinois.

2.  Due to his indigency, Petitioner is proceeding pro se and is preparing his reply brief himself.

3.  Petitioner has never attended law school and has no formal legal training in the preparation of briefs.

4.  The prison's Law Library has no books or other materials that would show a pro se litigant like Petitioner how to prepare a reply brief.

5.  Due to his incarceration, Petitioner's access to a Law Library, photocopying services, and typewriter ribbons are all controlled by prison staff.

-1-

6. One recurring problem is that prison guards frequently "lose" or destroy the sign-up sheets for Law Library appointments. (To obtain an appointment to go to the Law Library, an inmate must have his name listed on the sign-up sheet.) As a result of the guards' negligence or misconduct, Petitioner has missed several opportunities for an appointment to go to the Law Library to work on his cases.

7. Due to the IDOC's rules and regulations governing the storage of an inmate's personal property, Petitioner is permitted to keep only a limited amount of his legal materials and documents in his cell. His excess legal materials are stored in a room adjacent to the prison's Law Library. Access to Petitioner's excess legal materials is controlled by the Law Library staff and, generally speaking, is limited to once per week.

8. While there is a provision for granting an inmate additional access to his excess legal materials when he is facing a court deadline, Petitioner has had considerable difficulty obtaining this additional access, as noted in his Motion for Extension of Time filed in the Illinois Appellate Court simultaneous with the filing of this motion with this Court. A copy of this motion (including the exhibits and affidavits attached thereto) is attached to this motion. (See paragraphs 6-28 in particular.)

9. As is reflected both in Petitioner's original Petition and in Respondent's Answer, the state-court record and other materials associated with this case are rather extensive. As a result of the aforementioned restrictions, Petitioner cannot keep the entire state-court record and other materials in his cell, but must work with portions of the record and must prepare his reply brief in a piecemeal fashion, which adds considerably to the length of time needed to complete his reply brief.

10. As noted in paragraph 6 of Petitioner's Motion for Extension of Time filed in the Illinois Appellate Court, Petitioner has other cases pending at the present time. While he did recently complete and file his Petition for

Leave to Appeal with the Illinois Supreme Court, the delay in completing the PLA impacted his ability to complete his reply brief for the Illinois Appellate Court in the case of <u>Eichwedel v. Walker, et al.</u>, No. 2-07-1066, which was due originally on July 3, 2008.  The Illinois Appellate Court has extended that deadline once already, to August 7, 2008.  As is reflected in the copy of the <u>Motion for Extension of Time</u> filed in the Illinois Appellate Court which is attached to this motion, Petitioner has requested another extension of that deadline to September 4, 2008.

11.  Petitioner emphasizes the fact that his inability to complete his obligations in his various causes of action is largely the result of the obtuse and obstructionistic behavior of the prison guards and Law Library staff and **NOT** due to any lack of diligence on the part of Petitioner.

12.  In addition to the aforementioned problems, Petitioner notes that he has a full-time prison work/program assignment to which he is required to report at approximately 6:45 a.m. Monday through Friday of each week.  He works during the day shift from 7:00 a.m. to 3:00 p.m..  Occasionally, he is asked to work late during the week and/or on Saturdays.  As a result, this limits the free time he has available to work on his legal matters.

13.  In addition, due to Petitioner's prison work/program assignment, he has approximately **HALF** of the amount of time to work in the Law Library on his cases as someone who does not have an assignment on the day shift.  Law Library staff obdurately refuse to grant Petitioner **any** additional time in the Law Library during the day, **even though** Petitioner's supervisor at work has informed the Law Library staff that she is willing to give Petitioner **some** time off from his work/program assignment to attend one or two additional sessions of the Law Library during the day for the purpose of working on his numerous cases.

14.  In addition, it will take Petitioner time to read the <u>42</u> cases Respondent cited in her Answer.

15.  Petitioner is committed to filing an appropriate reply brief and this motion is made in good faith and not for the purpose of delay.  Frankly, the only party likely to be prejudiced by the delay occasioned by this request is Petitioner, since this case will have an impact upon his release date.

16.  Finally, Petitioner again emphasizes that it is the policies of the Respondent and/or her agents that have made it impossible for Petitioner to meet his numerous legal deadlines.  This includes both the actual policies set by Respondent and/or her agents regarding access to the Law Library and her unofficial policy of turning a blind eye to the misconduct of her agents, who frequently deny Petitioner the access to the Law Library, his excess legal materials, and photocopies he needs to meet his legal deadlines.

WHEREFORE, for the reasons set forth above, Petitioner respectfully and humbly beseeches this Honorable Court for an extension of time within which to file his reply brief, from August 7, 2008, to and including October 7, 2008.

Respectfully submitted,

Paul N. Eichwedel, pro se

## VERIFICATION

Pursuant to Title 28, Section 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 27, 2008          by: 

Paul N. Eichwedel, pro se
Reg. No.  B-02148
Dixon Correctional Center
P.O.  Box  1200
Dixon, IL   61021-1200

No. 2-07-1066

IN THE

APPELLATE COURT OF ILLINOIS

SECOND JUDICIAL DISTRICT

| | | |
|---|---|---|
| PAUL N. EICHWEDEL, | ) | On Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Lee County, Illinois. |
| Plaintiff-Appellant, | ) | |
| v. | ) | |
| | ) | No. 04-MR-54 |
| ROGER E. WALKER JR., JESSE MONTGOMERY, VICTOR D. TRANCOSO, SONJA NICKLAUS and CINDY EYKAMP, | ) | The Honorable Ronald M. Jacobson, |
| Defendants-Appellees. | ) | Judge Presiding. |

## MOTION FOR EXTENSION OF TIME

NOW COMES the Plaintiff-Appellant, Paul N. Eichwedel, pro se, pursuant to Supreme Court Rules 343 (c) and 361(f), and hereby moves this Honorable Court for an extension of time within which to file his reply brief, from August 7, 2008, to and including September 4, 2008. In support thereof, Plaintiff states the following:

1. On July 17, 2008, Plaintiff received this Court's July 14, 2008 Order granting him an extension of time within which to file his reply brief to and including August 7, 2008. Plaintiff thanks the Court for granting his request.

2. Unfortunately, there has been no improvement in the circumstances described in Plaintiff's previous motion for an extension of time, filed on June 25, 2008. In fact, the situation has deteriorated considerably since the filing of that motion. It is that deterioration in circumstances that necessitates a request for another extension of time.

3. As Assistant Attorney General (AAG) Brian F. Barov averred in paragraph 3(e) of his affidavit in support of his second Motion for Extension of

-1-

Time to File Appellees' Brief, Plaintiff's case "involves multiple claims" and "a voluminous record . . . ."

4. As noted in paragraphs 3-4 of his previous motion for an extension of time, Plaintiff is unable to keep all of the materials associated with this case in his cell, but must store them at the Law Library and work on his brief in a piecemeal fashion, which adds considerably to the length of time needed to complete the reply brief.

5. As Plaintiff also noted in paragraph 3 of his previous motion, IDOC rules provide that he be granted access to his excess legal materials **ONCE A WEEK**, but those rules also provide for **ADDITIONAL ACCESS** in the event that Plaintiff has "verified court, statutory or statute of limitations deadlines, or other verified emergency." Administrative Directive 05.10.115(II)(I)(8)(d)(2). A copy of the relevant pages of this Administrative Directive (A.D.) are attached to this motion as **Exhibit 1.**

6. As noted in paragraph 6 of his previous motion, Plaintiff currently has other cases pending in the Illinois Supreme Court and in the United States District Court for the Northern District of Illinois, Western Division (located in Rockford, Illinois). Plaintiff has always provided prison Law Library staff (Paralegal Assistants Carole S. O'Neal and Sally Joos, who are assisted by Library Technical Assistant Jill Straw) with copies of all court orders and other documentation by which they can easily verify that Plaintiff has "court, statutory or statute of limitations deadlines . . . ." (Note: At the present time, the position of Librarian is vacant; however, Mrs. O'Neal has assumed the Librarian's supervisory role by virtue of her seniority. She sets policy and makes the decisions; therefore, for the balance of this motion, she will be the party named as the one responsible for the acts of the library staff.)

7. For example, Mrs. O'Neal was provided with copies of this Court's original briefing scheduling Order, as well as every Order subsequent thereto,

by which this Court granted the parties extensions of time within which to file their opening and answer briefs. Mrs. O'Neal was well aware that Plaintiff's reply brief was due on July 3, 2008.

8. Mrs. O'Neal was also aware that Plaintiff's PLA in his criminal case was due on April 29, 2008 and that Plaintiff had been unable to meet that deadline, but was continuing to work on his PLA, which he planned to file as soon as possible, along with a motion requesting leave to file it late, pursuant to instructions he received from the Supreme Court Clerk, Ms. Juleann Hornyak (a copy of which Mrs. O'Neal was provided by Plaintiff).

9. Mrs. O'Neal was also aware that Plaintiff has a case pending in the U.S. District Court, as noted in paragraph 6, supra.

10. In spite of these **MULTIPLE** causes of action (and the deadlines associated therewith), and in spite of the **OBVIOUS URGENT NEED** for additional access both to the Law Library and to his excess legal materials, Mrs. O'Neal has obdurately refused to comply with either the aforementioned A.D. or the institution's policies governing Law Library access and services for inmates with verified court deadlines.

11. In Plaintiff's criminal case, for example, the Record on Appeal exceeds some **8,000 pages** and Plaintiff is raising **NINE** issues in his PLA! (At the appellate level, appointed counsel's briefs filed in the two direct appeals ran **97 pages** and **123 pages** respectively!) That is nearly **NINE TIMES** the size of the Record on Appeal in the instant cause, yet O'Neal **OBDURATELY REFUSED** to grant Plaintiff the additional access to his copy of the Record on Appeal in his criminal case that he so **OBVIOUSLY NEEDED** in order to complete his PLA! Her obduracy contributed significantly to Plaintiff's inability to complete his PLA on time.

12. The delay in completing his PLA obviously had an adverse impact on Plaintiff's ability to complete his reply brief in the instant cause. (Given the restrictions on the amount of legal materials Plaintiff is permitted to keep

in his cell, and given the fact that Plaintiff's PLA was already long overdue,
it was incumbent upon Plaintiff to complete his PLA before commencing work on
his reply brief in the instant cause.)  O'Neal was **well aware** that Plaintiff
needed additional access to his excess legal materials in order to complete his
PLA in his criminal case and commence work on his reply brief in the instant
cause, but she **OBDURATELY REFUSED TO PROVIDE IT, EVEN THOUGH THE aforementioned
A.D. GRANTS INMATES THE RIGHT TO ADDITIONAL ACCESS WHEN THEY ARE FACING DEAD-
LINES, AS PLAINTIFF WAS--AND IS!**

13.  On or about June 25, 2008 (the date on which Plaintiff filed his last
motion for an extension of time in the instant cause), Plaintiff submitted **TWO**
requests for access to his excess legal materials for the following week, speci-
fying on his request slip that he was requesting **TWO** appointments for the follow-
ing week, which was the week his reply brief in the instant cause was due.

14.  On or about June 27, 2008, Plaintiff received **TWO** "Excess Legal Box
Appointment" notices, one for June 30, 2008, and the other for July 1, 2008.
Plaintiff needed the two appointments in order to begin the process of return-
ing the documents associated with his PLA to his excess storage boxes at the
Law Library and retrieving the documents associated with the instant cause so
that he could begin working on his reply brief.  (At that juncture, Plaintiff
had completed the rough draft of his PLA; therefore, he no longer needed the
portion of the Record on Appeal he had in his cell at that time.)

15.  On June 30, 2008, Plaintiff was granted access to his excess legal
boxes, per his appointment.  He used that appointment to refile most of the
documents associated with his PLA and obtain a few missing pieces of informa-
tion he needed before typing the final draft of his PLA.

16.  On July 1, 2008, however, Plaintiff did **NOT** receive a call pass to
the Law Library (the call pass is required by Security Staff in order to author-
ize an inmate to move from the cellhouse to his destination, in this case, the

-4-

Law Library).  Plaintiff asked his Supervisor at work, Mrs. Susan Glover, to
contact Law Library staff about this.  She did so and she told Plaintiff that
Mrs. Jill Straw told her that Plaintiff's second appointment had been cancelled.
Mrs. Glover then informed Mrs. Straw that Plaintiff had specifically requested
the second appointment because of his court deadline.  (Plaintiff was standing
by Mrs. Glover while she spoke with Mrs. Straw on the phone.)  Mrs. Straw told
Mrs. Glover that she would check with Mrs. O'Neal about the matter.

17.  On July 2, 2008, Plaintiff went to the Law Library and asked Mrs.
Straw whether he would be granted his second appointment that evening or the
next evening.  She told Plaintiff that "we decided that you had enough box
access this week."  When Plaintiff asked her to define "we," she indicated that
Mrs. O'Neal, Mrs. Joos and she had made this decision.  Plaintiff reminded her
of his court deadline and of the aforementioned A.D., but she claimed ignorance
of the A.D., although she promised to look into it.

18.  It should be noted that on July 2, 2008, Plaintiff observed that Mrs.
Straw had **NO** other box access appointments and **NO** photocopy appointments, but
spent a good part of the evening **READING A BOOK!**  In other words, Mrs. Straw
**HAD TIME ON HER HANDS** and easily could have granted Plaintiff's request for
box access, which requires a grand total of about **5 MINUTES** of her valuable
time!  All she had to do to grant Plaintiff access was **PUT HER KEY IN THE DOOR
AND OPEN IT!**  The only other task associated with this access is for her and
Plaintiff to sign the access log, recording the date of access and the boxes
accessed--a task that takes about **30 SECONDS** to perform!  As a result, there
was **NO LEGITIMATE PENOLOGICAL REASON** for Mrs. Straw to deny Plaintiff access
to his excess legal storage boxes that evening--unless one considers **LAZINESS**
to be a legitimate penological reason!

19.  On July 3, 2008, Plaintiff had **NO CALL PASS** to the Law Library, **EVEN
THOUGH HE HAD SIGNED UP FOR AN APPOINTMENT AND REMINDED STAFF THAT HE HAD LEGAL**

-5-

DEADLINES! Plaintiff forwarded to the Law Library staff a request for box access for the following week.  (Note: Neither Mrs. O'Neal nor Mrs. Joos has a college degree, by their own admission.  Prior to obtaining her position as a "Paralegal Assistant" at Dixon, Mrs. O'Neal worked for the Lee County Circuit Clerk's Office "file-stamping documents," according to what she has told Plaintiff and others.  Mrs. Joos claims she worked as a secretary for an attorney prior to becoming a "Paralegal Assistant" at Dixon.  She is vague about her educational background.  Neither woman has ANY experience in the preparation of Complaints, Appellate Court briefs, PLAs, Post-Conviction Petitions, Petitions for a Writ of Habeas Corpus, Petitions for a Writ of Certiorari or any of the other pleadings Plaintiff has prepared, both for himself and on behalf of other inmates over the years!  Given these facts, it is clear that NEITHER WOMAN HAS ANY IDEA WHATSOEVER about the time and effort required to prepare the aforementioned pleadings; therefore, there was NO OBJECTIVE BASIS for their determination that Plaintiff had enough access to his excess legal materials that week!)

20.  On July 7, 2008, Plaintiff went to the Law Library and asked Mrs. Straw whether or not he was scheduled for a box appointment that week.  She checked her schedule and said that no appointment was listed for that week. Plaintiff asked her whether she had consulted the A.D. regarding box access as she had promised she would and she admitted that the A.D. said that inmates with deadlines were entitled to additional access.  Plaintiff then submitted ANOTHER request slip for box access, asking that he be permitted access either Wednesday or Thursday of that week.

21.  It was not until JULY 14, 2008 that Plaintiff was FINALLY granted access to his excess legal storage boxes!  In other words, it was TWO WEEKS before he had another access appointment EVEN THOUGH the A.D. grants ALL inmates access ONCE A WEEK and grants inmates with legal deadlines ADDITIONAL ACCESS!  As a result, Plaintiff was denied access to the record on appeal and

other legal materials associated with the instant cause **FOR TWO WEEKS!**

22.  Again, Plaintiff emphasizes the fact that granting an inmate box access is **NOT** a difficult or time-consuming task for staff!  Normally, there are one or two inmates with box access appointments on any given evening.  Some evenings, there are **NO** such appointments!  The same holds true for photocopy appointments; rarely are there more than one or two per evening.

23.  Mrs. O'Neal has also refused to budge from her 25-page weekly case law photocopy limit, even in the face of Plaintiff's multiple court deadlines. Plaintiff needs copies of the cases cited by Defendants in order to read them in preparation of his reply brief.  There simply isn't enough time to read and take notes from these cases during the limited amount of time Plaintiff has in the Law Library.  Again, Plaintiff emphasizes the fact that **HE IS PAYING NEARLY THRICE THE COST OF PRODUCING THESE COPIES!**

24.  Plaintiff also emphasizes the fact that O'Neal **has the ability to print these cases off the computer** for Plaintiff, which would enable him to have the Official Reporter version of these cases, but **SHE OBDURATELY REFUSES TO DO SO!**  Since Defendants cite to the Official Reporters in their answer brief, and since the prison Law Library does not have the Official Reporters (it has Illinois Decisions instead), it takes longer for Plaintiff to locate the page of the case to which Defendants are citing.  This adds to the amount of time Plaintiff needs to complete his reply brief.

25.  Plaintiff considered filing a Grievance about the aforementioned problems with Mrs. O'Neal, but decided against doing so because he fears retaliation. Mrs. O'Neal can be very vindictive, and she has the power to reduce Plaintiff's access to the Law Library and his excess legal storage boxes even more--at least in the short term.  See, e.g., the affidavit by Kevin Zernel.

26.  Plaintiff is trying to negotiate additional access through other staff, including his supervisor, Mrs. Glover, and his counselor, Mr. Steve Lopez, who

are willing to intercede on Plaintiff's behalf.  In fact, thanks to Mrs. Glover's intercession, Plaintiff was **finally** able to get his PLA photocopied and mailed on July 24, 2008!

27.  On July 14, 2008, Plaintiff provided Mrs. Straw with a copy of the file-stamped (by this Honorable Court's Clerk) caption page of his last motion for an extension of time.  In addition, he sent a letter to Mrs. O'Neal and Mrs. Joos, summarizing the current status of his pending cases and requesting their assistance in providing the access and services necessary to enable him to complete his legal obligations as soon as possible.  A copy of this letter is attached as **Exhibit 2.**

28.  Plaintiff has attached to this motion affidavits from other inmates, who verify many of the facts Plaintiff has set forth in this verified motion regarding the conduct of Mrs. O'Neal and the library staff.

29.  Plaintiff takes his right of access to the courts very seriously.  He expends considerable time, energy, effort and expense on the preparation of his legal pleadings, particularly his briefs to this Court.  While this Court has not had occasion to rule in Plaintiff's favor previously, it **HAS** taken the time to acknowledge the obvious effort Plaintiff expends in crafting his arguments to this Court.  (See Eichwedel v. Taylor, et al., Rule 23 Order, Case No. 2-03-0428.)

30.  As the Court noted in Walters v. Edgar, 900 F.Supp. 197, 222 (N.D. Ill. 1995):

> "[T]he Constitution protects with special solicitude a prisoner's access to the courts."  Davidson v. Scully, 694 F.2d 50, 54 (2d Cir. 1982).  * * * [Other citations omitted.]  "'All other rights of an inmate are illusory without it, being entirely dependent for their existence on the whim or caprice of the prison warden.'"  DeMallory v. Cullen, supra, 855 F.2d at 446 (quoting from Adams v. Carlson, 488 F.2d 619, 630 (7th Cir. 1973)).

In the instant cause, Plaintiff's right of access to the courts **IS "ENTIRELY DEPENDENT** for [its] existence **ON THE WHIM OR CAPRICE OF"** Paralegal Assistant

Carole S. O'Neal, who, it should be remembered, IS AN AGENT AND COWORKER OF THE DEFENDANTS! Id. (emphasis added).

31.  Furthermore, as the Court held in Green v. Johnson, 977 F.2d 1383, 1389 (10th Cir. 1992), "[a]ny deliberate impediment to access [to the courts], EVEN A DELAY OF ACCESS, may constitute a constitutional deprivation"!  (Emphasis added.)  Accord Simkins v. Bruce, 406 F.3d 1239, 1242 (10th Cir. 2005) (citing and quoting Green with approval).

32.  Plaintiff respects this Court's authority to set its own schedule for briefing in every case before it and Plaintiff regrets having to ask for another extension of time, both because of the inconvenience to this Court and because the delay in completing his reply brief in the instant cause will result in his inability to meet his other legal deadlines.  Nevertheless, it should be obvious from the facts set forth above that BUT FOR THE DELIBERATELY OBTUSE AND OBSTRUC- TIONISTIC BEHAVIOR ON THE PART OF LAW LIBRARY STAFF, Plaintiff would have been able to complete his reply brief on or before August 7, 2008!

33.  Plaintiff is asking this Court to intervene by granting him the exten- sion of time requested, so that the deliberately obtuse and obstructionistic behavior of O'Neal and her staff does not result in the forfeiture of Plain- tiff's right to file a reply brief in the instant cause.

34.  Finally, since Plaintiff has filed a Motion for Leave to File a Reply Brief in excess of the Page Limit, providing an extension of time will afford the Court time to rule on Plaintiff's motion and will afford Plaintiff time to comply with the Court's ruling.

WHEREFORE, for the above-stated reasons, Plaintiff respectfully requests that this Honorable Court grant him an extension of time within which to file his reply brief, to and including September 4, 2008.

Respectfully submitted,

Paul N. Eichwedel
Reg. No.  B–02148
Dixon Correctional Center
P.O.  Box  1200
Dixon, IL  61021–1200

## VERIFICATION BY CERTIFICATION

Under penalties as provided by law pursuant to Section 1–109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this motion are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

Executed on July 25, 2008          by:

Paul N. Eichwedel
Reg. No.  B–02148
Dixon Correctional Center
P.O.  Box  1200
Dixon, IL  61021–1200

| ADMINISTRATIVE DIRECTIVE | Effective 2/1/2000 | Page 6 of 8 | Number 05.10.115 |
|---|---|---|---|

correspondence), inventory number of the assigned box, and the date of issuance.

4.   Inventory records shall be adjusted to reflect boxes transferred in and boxes transferred out. The inventory number of boxes shall be added or removed from each facility's inventory.

5.   Inmates shall be notified of personal property procedures.

6.   A personal property storage box shall be issued for each inmate received at a facility unless a property box was transferred in with the inmate. The assignment or transfer of all property boxes shall be documented. Excess personal property that can not be stored in one personal property storage box shall be confiscated and handled in accordance with the provisions outlined in Department Rule 501C.

7.   Upon an inmate's request, a correspondence storage box shall be issued to the inmate and documented unless a correspondence box was transferred in with the inmate or he or she already has a correspondence box in the living area.

8.   Excess legal materials that can not fit into the inmates correspondence storage box shall be stored and maintained in a secure area designated by the Chief Administrative Officer.

a.   The inmate may inventory and pack the additional storage boxes. Cardboard storage boxes may be used for materials not stored in the inmate's living area.

b.   A receipt for the storage box shall be signed by the inmate. A copy of the receipt shall then be placed in the box in the presence of a staff person; a copy of the receipt shall be maintained by a designated staff person; and one copy of the receipt shall be issued to the inmate.

c.   The storage box shall be sealed by the designated staff person in the presence of the inmate and clearly labeled with the inmate's name, number, and the designation of "excess legal material."

d.   To gain access to the material, the inmate must submit a written request seven days prior to the desired review date, absent verified court, statutory or statute of limitations deadlines, or other verified emergency. The inmate shall be allowed access to the material:

(1)   With the condition that he or she retrieve and return to his or her living area no more material than what



EXHIBIT 1

*Illinois Department of **Corrections***

| ADMINISTRATIVE DIRECTIVE | Effective 2/1/2000 | Page 7 of 8 | Number 05.10.115 |
|---|---|---|---|

will fit into the box that is in his or her living area; and

(2) Provided that he or she has been allowed access no more than once a week, absent verified court, statutory or statute of limitations deadlines, or other verified emergency.

e. Inmate para-legals shall not be subject to the once per week access restriction in relation to the work he or she does on other inmates' cases.

f. Inmate names and numbers, access request dates, date of approval or denial, and if applicable, the reason for denial shall be documented.

9. Inmates shall store all personal belongings except those items in paragraph II.H. in the personal property or correspondence box during morning count, prior to a cell or institutional transfer, and upon staff request.

a. Staff shall notify inmates that morning count will begin shortly.

b. In preparation for morning count or a cell or institution transfer or upon staff request, all property must be replaced in the appropriate storage boxes, the box lids shall be closed, and the personal property storage boxes shall be stored under the bunks prior to inspection.

c. Inmates who refuse to comply with the order to replace their property prior to inspection shall be subject to disciplinary action in accordance with Department Rule 504A.

10. The Chief Administrative Officer shall develop a list of personal property allowed in segregation. Such list shall meet the minimum standards set forth in 20 Ill. Adm. Code 504.620. The possession of religious items shall be governed by 20 Ill. Adm. Code 425. Unless otherwise approved by the Chief Administrative Officer, when an inmate is placed in segregation:

a. The correspondence storage box shall be utilized in the living area.

(I) Inmates who are permitted a correspondence storage box shall be allowed to possess any number of publications that can be stored in said box.



EXHIBIT 1

Paul N. Eichwedel
Reg. No.   B-02148
Unit 26    Cell 60

Mrs. Sally Joos & Mrs. Carole S. O'Neal
Paralegal Assistants
Dixon Correctional Center

Re:  Deadline Status Report

Dear Mrs. Joos and Mrs. O'Neal,                     July 14, 2008

    I wanted to update you on the status of my various statutory and court
ordered deadlines. As of this date, here is the status:

    1. **State Habeas Corpus/Apprendi claim:**  As you know (since it has been
verified previously), I completed the maximum sentence for murder on **January
3, 2008,** at least according to the Records Office's calculations. As a
result, my State Habeas Corpus was due on that date. Your law clerk, Mr.
Philip LaPointe, has verified previously that my claim has an arguable legal
basis, and he is rather an expert on this issue. As of this date, I have
not completed the research and other work necessary to file the Complaint.
As a result, this deadline has not been met and I am in an ongoing effort
to complete this project.

    2. **Petition for Leave to Appeal in my criminal case:**  My original Peti-
tion for Leave to Appeal (PLA) was due on **March 25, 2008,** pursuant to Illinois
Supreme Court Rule 315(b). As you may recall, I filed a motion for an exten-
sion of that deadline, which was granted on March 28, 2008 (a copy of which
was provided to you). My new deadline was **April 29, 2008.** The Court does
not entertain multiple motions for an extension of time, as does the Appel-
late Court. The **practice** of the Supreme Court is that if you don't make the
first extension, you are to file a motion for leave to file your PLA late.
That is the instruction given in the letter referenced above (the one granting
the initial extension), and that has been my **CONSIDERABLE** experience with the
Illinois Supreme Court over the past 10-12 years. I have filed **SEVERAL** PLAs
on my own behalf and on behalf of others, which is how I know their standard
practice.
    The bottom line is that I have not completed my PLA, but expect to do so
by the end of the week. The PLA will be **119** pages long, and there will be
**134** pages in the Appendix. Since it is late, I will be filing a motion for
leave to file it late, as well as a motion to excuse the page limit. I will
need some photocopies, as well as time to collate and staple it; therefore I
will need to coordinate box access with the copy appointment. I have much
of the PLA and Appendix already copied, so I don't anticipate that this will
impact your time as much as it normally would. Nevertheless, it will take
me time to do the collating and stapling. I hope you will have the size of
staple I will need. If not, let me know and I will bring some from work. I
would appreciate a daytime, double session if at all possible, either Wednesday
or Thursday of next week. The sooner I get this in the mail, the more likely
they are to accept it late.

    3. **Reply Brief in Eichwedel v. Walker, et al.,** No. 2-07-1066:  This was
due on July 3, 2008, and as I told Mrs. Straw this evening, I was not able to

1 of 2         **EXHIBIT 2**

meet this deadline either.  I have filed a motion for an extension of time to **August 7, 2008,** and I provided Mrs. Straw with a file-stamped copy of the caption page of the motion.  Again, the sooner I can get this completed, the more likely it is that the Court will accept it late.  For that reason, I will appreciate any additional library and box access possible.

    4.  **U.S. ex rel. Eichwedel v. Chandler,** No. 08 C 50077:  The State filed their answer on July 9, 2008, and both Mr. Boney and one of your law clerks (Jack) indicate that pursuant to Rule 5(e), I am permitted to file a reply at a time set by the Court.  I have not yet received the Court's Scheduling Order, but this remains a pending cause of action, so call it a statutory deadline or whatever you wish.


    Essentially, that is the status of each case at this juncture.  Given these multiple causes of action and deadlines, it is imperative that I remain on your deadline list.  Since I am already late on **three** of the four cases, the situation is even more urgent.  I will, of course, continue to keep you posted as things develop.  Thank you, in advance, for your cooperation.

Respectfully,

Paul N. Eichwedel

**EXHIBIT 2**

STATE OF ILLINOIS )
                  )SS
COUNTY  OF  LEE )

## A F F I D A V I T

Under penalties as provided by law pursuant to Section 1-109 of the Code
of Civil Procedure, I, Kevin Zernel, Reg. No.B-31628 , of the City of Dixon,
County of Lee, and the State of Illinois, hereby certify that I have personal
knowledge of the facts set forth herein, that they are true and correct to the
best of my knowledge, information and belief, that I am competent to testify
thereto, and that if called to testify, I would state as follows:

1. I have read the <u>Motion for Extension of Time</u> prepared by Paul N.
Eichwedel and while I am not a witness to the specific incidents to which he
refers in his motion, I have had strikingly similar experiences with the
so-called paralegal assistants, Carole S. O'Neal and Sally Joos.

2. I recall a specific incident which took place around April of 2007
involving Carole S. O'Neal and, to a somewhat lesser extent, Sally Joos.  (It
is clear to me and to anyone familiar with them that Mrs. O'Neal calls the shots
at the Law Library and that Mrs. Joos simply goes along with Mrs. O'Neal, who
is the more abrasive, more dominant personality.)

3. The incident involved my requests for services, similar to the services
referred to by Mr. Eichwedel in his motion.

4. As was the case with Mr. Eichwedel, Mrs. O'Neal informed me that in
her opinion, I did not need the case law and other information I was requesting
from her.

5. I asked her what qualified her to make that assessment and she responded
that she was "a paralegal assistant."

6. Unlike Mr. Eichwedel, I DO have formal legal education and training as
a Legal Assistant, which I received at Loyola University in Chicago, Illinois.

7. I told Mrs. O'Neal that I had never heard of a paralegal ASSISTANT and

-1-

I asked her what formal legal education she had.

8.  She became rather evasive at that juncture and she mumbled something about taking a night class at the local community college.

9.  When I pressed her for specific details, she became indignant, loud, and abrasive, and threatened to have me walked to disciplinary segregation. She tried to get the officer on duty to write me an Inmate Disciplinary Report and have me walked to Segregation, but he refused to do so because he said he had not observed me violating any prison rule.

10.  This infuriated Mrs. O'Neal even more, so she threatened me further by stating that if I filed any lawsuits or grievances about her, I would find it very difficult--if not impossible--to obtain an appointment to come to the Law Library and work on the cases I was working on at that time. She indicated that since she did the appointment scheduling, she was in the position to carry out this threat.

11.  I have attended the Law Library with sufficient frequency to verify what Mr. Eichwedel says about their workload. They rarely have more than one or two box access appointments per session and rarely have more than one or two photocopy appointments per session. As Mr. Eichwedel indicates in his motion, box access involves a minimal expenditure of her time, basically, the time it takes to unlock and open a door and allow the inmate to retrieve his boxes and take them into the Law Library to use them. She then opens and locks the door when it is time for the session to end.

Further, affiant sayeth naught.

Executed on July 20, 2008.                    by: _Kevin Zernel_

                                                  Kevin Zernel

-2-

STATE OF ILLINOIS )
                  )SS
COUNTY   OF   LEE )

## A F F I D A V I T

Under penalties as provided by law pursuant to Section 1-109 of the Code
of Civil Procedure, I, Michael Clark, Reg. No. C-10666, of the City of Dixon,
County of Lee, and the State of Illinois, hereby certify that I have personal
knowledge of the facts set forth herein, that they are true and correct to the
best of my knowledge, information, and belief, formed after reasonable inquiry,
that I am competent to testify thereto, and that if called to testify, I would
state as follows:

1.  I usually attend the Law Library at the Dixon Correctional Center at
least once a week.

2.  I also attend the Qur'anic study classes, which are held in a classroom
just a short distance down the hall from the Law Library.

3.  As a result, I am familiar with staff members Carole S. O'Neal and Jill
Straw and have had interactions with them on many occasions.

4.  I have read Mr. Eichwedel's Motion for Extension of Time, and while I
am not a witness to most of the incidents reported in his motion, nothing he
says in his motion surprises me, based upon my own experiences with these women.

5.  These women are extremely lazy and unprofessional.  Rarely do they
have more than one or two box or photocopy appointments on any given evening;
often, they have neither.

6.  I have frequently observed Mrs. Straw sitting in the office reading a
book or out in the hall socializing with the officer on duty.  Mrs. O'Neal does a
fair amount of socializing as well.  Neither woman is that busy on most evenings.

7.  In addition to being lazy and inefficient, Mrs. O'Neal can be very
mean-spirited.  For example, on a number of occasions, I have observed her
telling an inmate that he must make an appointment to get a legal document

-1-

photocopied—even when the document was only **one or two pages in length AND SHE WAS NOT BUSY AT THE TIME!**  Frankly, in addition to being incredibly mean-spirited, that was incredibly inefficient, since it ultimately took **MORE** of her time to schedule that appointment and then photocopy that document than it would have taken had she just photocopied it on the spot!

    Further, affiant sayeth naught.


Executed on July 21, 2008           by: _____

                                    Michael Clark

STATE OF ILLINOIS )
                  )SS
COUNTY   OF   LEE )

## A F F I D A V I T

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, I, Gregory Johnson, Reg. No. K-54051, of the City of Dixon, County of Lee, and the State of Illinois, hereby certify that I have personal knowledge of the facts set forth herein, that they are true and correct to the best of my knowledge, information, and belief, formed after reasonable inquiry, that I am competent to testify thereto, and that if called to testify, I would state as follows:

1. I attend the Law Library at the Dixon Correctional Center on a regular basis, usually on Monday evenings.

2. Mrs. Jill Straw is the staff member in charge of the Law Library and General Library on Monday evenings.

3. Usually, Mrs. Straw has no more than one or two inmate box appointments (excess legal boxes) and no more than one or two photocopy appointments (and rarely both on the same evening). On many evenings Mrs. Straw has no box or photocopy appointments.

4. I have observed Mrs. Straw just sitting in her office reading a book on many occasions, particularly on the evenings when she has no box or photocopy appointments, or has just one appointment.

Further, affiant sayeth naught.

Executed on July 20, 2008.                by: _____
                                                Gregory Johnson

STATE OF ILLINOIS )
                  )SS
COUNTY   OF   LEE )

### A F F I D A V I T

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, I, John Kines, Reg. No. N-84753, of the City of Dixon, County of Lee, and the State of Illinois, hereby certify that I have personal knowledge of the facts set forth herein, that they are true and correct to the best of my knowledge, information and belief, that I am competent to testify thereto, and that if called to testify, I would state as follows:

1. Mr. Paul N. Eichwedel has apprised me of his recent problems with obtaining access to his excess legal storage boxes at the Law Library at Dixon.

2. I have had similar problems in the past, here at Dixon C. C..

3. On one occasion, I had an appointment to call my attorney on a specific date and at a specific time, which was scheduled by Dixon's Litigation Coordinator, pursuant to their policies governing legal phonecalls.

4. Pursuant to A.D. 05.10.115, I made a formal, written request for access to my excess legal storage boxes seven days prior to the scheduled appointment with my attorney. I explained that I needed to obtain documents from my excess legal storage boxes because they contained information relevant to the issues I was going to discuss with my attorney.

5. Mrs. Carole S. O'Neal, the Paralegal Assistant at Dixon, did not honor my appointment request. She gave me an appointment on a different date and at a different time than the one I had requested. This meant that I would not have the materials I needed in time for my legal phonecall.

6. The point is that Mrs. O'Neal did not comply with the aforementioned A.D..

Further, affiant sayeth naught.

Executed on July 24, 2008                   by: _John E. Kines_____

                                            John Kines,  #N-84753

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel.<br>PAUL N. EICHWEDEL,<br><br>Petitioner,<br><br>v.<br><br>NEDRA CHANDLER, Warden,<br>    Dixon Correctional Center,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 08 C 50077<br><br><br>The Honorable<br>Philip G. Reinhard,<br>Judge Presiding. |

### NOTICE OF FILING

To:  Clerk of the U.S. District Court       Sheri L. Wong
     c/o Prisoner Correspondent              Assistant Attorney General
     United States Court House               100 W. Randolph St., 12th Floor
     211 South Court Street                  Chicago, Illinois   60601-3218
     Rockford, IL    61101
                                             1 copy
     1 original & 1 copy

    PLEASE TAKE NOTE that on the 28th day of July, 2008, I filed through the
U.S. Mail, with the above-named parties, at the above-listed addresses, in the
above-stated amounts, my **MOTION FOR ENLARGEMENT OF TIME.**

### CERTIFICATE OF SERVICE

    Under penalties as provided by law pursuant to Title 28, Section 1746, I
declare under penalty of perjury that I served the above-listed document upon
the above-named parties, at the above-listed addresses, in the above-stated
amounts, by depositing them into correctly addressed envelopes and tendering
said envelopes to a correctional officer at the Dixon Correctional Center
(together with an Offender Authorization for Payment voucher signed by me,
attached to said envelopes, authorizing the institution's Business Office and
Mailroom to charge my Inmate Trust Fund Account for the cost of mailing said
envelopes First Class U.S. Mail) on July 28, 2008.

*Paul N. Eichwedel* (signature)

Paul N. Eichwedel, pro se
Reg. No. B-02148
Dixon Correctional Center
P.O. Box  1200
Dixon, IL    61021-1200

PAUL EICHWEDEL #B-02148
P.O. Box 1200
DIXON, IL 61021-1200

CLERK OF THE U.S. DISTRICT COURT
% PRISONER CORRESPONDENT
UNITED STATES COURT HOUSE
211 SOUTH COURT STREET
ROCKFORD, IL 61101

This Correspondence Is From
An Inmate Of The Illinois
Dept Of Corrections



UNITED STATES POSTAGE
$ 0.
02 1M        JUL
0004254112
MAILED FROM ZIP COD